UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PERNILLE FUNK, Plaintiff, | : | HONORABLE JOSEPH E. IRENAS |
| v. | : | CIVIL ACTION NO. 06-1410 (JEI) |
| MICHAEL CHERTOFF, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY, Defendant. | : | **OPINION** |

**APPEARANCES:**

THE PEARCE LAW FIRM
By: Edith A. Pearce, Esq.
1601 Sansom Street, Suite 2C
Philadelphia, Pennsylvania 19103
Counsel for Plaintiff

CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
By: Paul A. Blaine, Esq., Assistant United States Attorney
401 Market Street, Fourth Floor
Camden, New Jersey 08101
Counsel for Defendant

**IRENAS**, Senior District Judge:

This is a hostile work environment suit filed by Pernille Funk, a female United States Federal Air Marshal, against her employer, Transportation Security Administration ("TSA").[1] Funk asserts that her male co-workers harassed her on account of her gender, creating a hostile work environment, in violation of

---

[1] The Federal Air Marshal Service is part of TSA, which is an agency within the Department of Homeland Security ("DHS"). Accordingly, the Secretary of DHS, Michael Chertoff, is named as the Defendant to this action. For convenience, the Court will refer to Defendant as "the government."

Title VII, 42 U.S.C. § 2000e-16.[2] The government moves for summary judgment.[3]

## I.

Funk is a Federal Air Marshal ("FAM") Firearms Instructor assigned to the FAM Training Center in Pomona, New Jersey. Her primary duty is training FAM students. She is, and was during the relevant time period, the only female instructor permanently assigned to the Pomona training center.

Funk alleges that between late 2002 and the summer of 2004, she was targeted for harassment by two of her male FAM instructor co-workers, FAM Mark Royer and FAM Serge Potapov.[4] Funk asserts that both Royer and Potapov told her in late 2002 that "women don't belong here." She does not elaborate on where or under

---

[2] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346.

[3] The government titled its motion, "Motion to Dismiss the Action for Failure to State a Claim upon which Relief can be Granted, or Alternatively for Summary Judgment." Given both sides' substantial reliance on the administrative record in this case, the Court will treat the Motion as one for summary judgment.

[4] Funk also asserts in her brief that she was subjected to arbitrary and unreasonable physical training standards by her supervisor, Brad DeLauter, allegedly in order to prevent Funk from becoming a physical training instructor. However, Funk made no such allegations in the complaint initiating this lawsuit, nor did she make such allegations in her EEO complaint. Because Funk has failed to pursue administrative remedies with regard to the supervisor allegations, they cannot form the factual basis of her hostile work environment claims in this case. *See Johnson v. Gober,* 83 Fed. App'x 455, 460 (3d Cir. 2003) ("a plaintiff in a Title VII action must 'exhaust all required administrative remedies before bringing a claim for judicial relief.'")(quoting *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997)).

what circumstances the statement was made.

In August, 2003, Funk alleges that when she encountered Potapov outside the pistol range, Potapov raised his hands pretending that he had a gun and simulated shooting her head off. Funk concludes that Potapov made the gesture because a week earlier Funk had "attempted to assist" an unidentified female trainee who was allegedly being "harassed" by Royer and Potapov. (Funk Aff. at 18).[5]

Funk complains of several incidents occurring in June and July, 2004. First, trainees under Funk's supervision used "duty ammunition," rather than the "practice ammunition" they were supposed to use, during a firearms training session. Funk asserts that Royer and Potapov, in an attempt to demean and embarrass her in front of trainees yelled at her: "The EPA says you are responsible for paying $10,000 per round fired."

Second, during a "Defensive Measures" sparring session,[6] Potapov, who was Funk's sparring partner, kicked her (although Funk admits that the kick was not hard) and then stated to everyone watching, "and then you can do this" whereupon Potapov allegedly put his fingers through Funk's hair and pulled out her ponytail, messing up her hair.

---

[5] In her affidavit, Funk does not state how she tried to help the trainee or how the trainee was being harassed.

[6] During June and July 2004, Funk and the other FAMs were completing their "Phase II training" where they themselves were being trained, not instructing other trainees.

Third, during another sparring session, Funk was paired with Royer. She asserts Royer, who was 6 feet, one inch tall and 220 pounds, hit her with all his strength despite her being only 5 feet, five inches tall and 120 pounds. The sparring partners were told beforehand to only use 50% force and Royer was immediately reprimanded by an instructor for using too much force.

Funk also believes that Royer persuaded Funk's training instructor to test her in scenarios that were more complex and difficult than scenarios given to others.[7]

During another training session while Funk was running faster than another male FAM, Potapov allegedly yelled to the male runner, "You're not going to let a girl beat you, are you?"

Lastly, when Funk successfully completed her "Phase II Training," Potapov allegedly passed Funk in the hallway and asked, "Do they still allow girls in here?"

Sometime during July, 2004, Funk complained to her supervisor, Joseph D'Angelillio, Deputy Special Agent-in-Charge, about Royer and Potapov, describing the incidents above, as well as complaining about how Royer and Potapov treated other female students. (Def's Ex. 1, tabs 9, 21, and 22) D'Angelillo told her that he would "look into it." (Id.) He also suggested that

[7] The undisputed record demonstrates, however, that Funk successfully completed her training.

she write down her allegations and consider pursuing an EEO complaint. (Id.)

In late July, in response to D'Angelillo's suggestion, Funk returned to D'Angelillo's office with a written report of her allegations. (Id.) In the interim, D'Angelillo had contacted the FAM EEO Coordinator at FAM headquarters to obtain information about filing a formal EEO complaint but had not heard back from headquarters. (Id.) D'Angelillo took Funk's written report and immediately forwarded it to Gary McDermott, the Deputy Assistant Director, Office of Training and Development, who forwarded the allegations to the FAM EEO Coordinator at headquarters by July 28, 2004. (Id.)

On August 8, 2004, Funk signed a "Request to Mediate" her dispute, which was given to her by an EEO Counselor for the Department of Homeland Security, Kimberly O'Brine. (Def's Ex. 1, tab 4) In accordance with the DOH's Alternative Dispute Resolution Program,[8] a four-hour mediation session was conducted on September 3, 2004, but no settlement was reached. (Def's Ex. 1, tab 5)

Before the mediation, two supervisors from TSA headquarters conducted a three-day fact finding investigation into Funk's

[8] A TSA Memorandum states, "The objective of [TSA's Alternative Dispute Resolution Program] is to resolve allegations of workplace discrimination at the earliest possible stage of the EEO process. . . . [the ADR Program] provides a range of problem-solving processes used for resolving disputes in lieu of more formal EEO complaint procedures." (Def's Ex. 3) The mediation is "facilitated by a neutral mediator." (Id.)

allegations, (Def's Ex. 1, tab 22), although it is unclear from the record what that investigation entailed.

After mediation failed, Funk filed a formal EEO complaint on September 25, 2004. An investigation was conducted from October 26, 2004, to December 31, 2004. The EEO investigator, Hal Stein, took sworn statements from Funk, Royer, Potapov, D'Angelillio, and ten other FAMs. During the first days of January, 2005, Investigator Stein submitted to TSA a formal Report of Investigation, totaling 279 pages (including exhibits). The Report, however, did not conclude whether or not Funk had been the victim of a hostile work environment on account of her sex.

By letters dated March 30, 2005, Royer and Potapov were notified that they would be suspended for "Unprofessional Conduct."[9] The letter to Royer stated the reason for his suspension:

> While detailed to your position as a training instructor at the FAM Training Center, ACY, you conducted yourself in an unprofessional manner and created a hostile work environment for fellow instructors. Specifically, you did so by verbally and physically intimidating them. Upon further investigation of the initial allegations it has been determined that you made verbally disparaging statements regarding a female instructor. Furthermore, as a result of the same investigation it has been determined that excessive force during a subsequent training exercise was also used against the

[9] Both Royer and Potapov were first notified of the proposed suspensions by letters dated January 5, 2005. They retained counsel to respond, who requested and was granted an extension to reply to the allegations in the notice.

same female instructor.

(Def's Ex. 4) Royer was suspended from his position from April 10, 2005 to April 15, 2005.

The letter to Potapov stated the reason for his suspension:

> While detailed to your position as a training instructor at the FAM Training Center, ACY, you conducted yourself in an unprofessional manner and created a hostile work environment for fellow instructors. Specifically, you did so by engaging in discreet and unobtrusive behaviors intended to demean and diminsh a female instructor.

(Def's Ex. 5) Potapov was suspended from his position from April 10, 2005 to April 11, 2005.[10]

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v.*

---

[10] Even before formal discipline was taken against Royer and Potapov, on December 26, 2004, they were both transferred to the Philadelphia FAM field office. The government argues that the transfers were part of the "response" to Funk's allegations, even though they were not part of the "discipline" taken by TSA. The government has put forth no evidence of a causal connection, other than mere temporal proximity, between Royer's and Potapov's alleged actions and their subsequent transfers. The disciplinary letters make no mention of a transfer. Moreover, while D'Angelillio's Declaration states that Royer and Potapov were transfered, it does not say they were transferred because of Funk's allegations. Therefore, on summary judgment, the Court must draw the inference favorable to Funk that the transfers were not a result of the alleged conduct.

*Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). "'With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'- that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case.'" *Conoshenti v. Public Serv. Elec. & Gas*, 364 F.3d 135, 145-46 (3d Cir. 2004) (quoting *Celotex*). The role of the Court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

**III.**

Funk asserts that the conduct of Royer and Potapov created a hostile work environment, violating her rights under Title VII.

Title VII of the Civil Rights Act of 1964 prohibits workplace discrimination because of an individual's sex, *see* 42 U.S.C. § 2000e-2(a)(1). An employer will be liable for hostile work environment sexual harassment when a plaintiff proves that: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the

discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same sex, in like position; and (5) a basis for respondeat superior liability. *Kunin v. Sears Roebuck Co.*, 175 F.3d 289, 293 (3d Cir. 1999) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990)).

The government moves for summary judgment asserting that as a matter of law, the alleged conduct is not actionable under Title VII because it is not sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *See Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Additionally, the government argues that there can be no respondeat superior liability because TSA took prompt remedial action in response to Funk's complaint to D'Angelillio. Because the Court holds that there is no respondeat superior liability, the government's first argument need not be addressed. *See Knabe v. The Boury Corp.*, 114 F.3d 407, 410 (3d Cir. 1997) ("Even if a work environment is found to be hostile, a plaintiff must also show that the conduct creating the hostile work environment should be imputed to the employer.").

"An employer is liable for an employee's behavior under a negligence theory of agency 'if a plaintiff proves that management-level employees had actual or constructive knowledge

about the existence of a sexually hostile work environment and failed to take prompt and adequate remedial action.'" *Knabe*, 114 F.3d at 411 (quoting *Andrews*, 895 F.2d at 1486).[11] The issue in this case is whether the remedial action taken by TSA was adequate.[12] Funk must demonstrate that a material issue of fact exists as to whether the action taken was "reasonably calculated to prevent further harassment." *Id.* at 412. Notably, a remedial measure may be reasonably calculated to prevent further harassment even if it is not effective in preventing subsequent harassment. *Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006).[13]

---

[11] *See also Moore v. City of Philadelphia*, 461 F.3d 331, 349 (3d Cir. 2006) ("When coworkers are the perpetrators of the harassment, the plaintiff must prove employer liability using traditional agency principles. There is such a basis for liability where supervisors knew or should have known about the co-worker harassment, but failed to take prompt and adequate remedial action to stop the abuse."); *Weston v. Pennsylvania*, 251 F.3d 420, 427 (3d Cir. 2001) ("when the source of the alleged harassment is a co-worker, a plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action.").

[12] Funk also asserts that TSA's response was not prompt because it knew or should have known of the "perversely pro-white male and anti-anybody else atmosphere" at the Training Facility. However, Funk has presented no evidence from which a reasonable fact finder could conclude that the harassment she experienced was "so open and pervasive that a reasonable employer could not have been ignorant of it." *Kunin*, 175 F.3d at 295. Moreover, the undisputed evidence demonstrates that D'Angelillio and others at TSA responded immediately after Funk brought her complaint to management's attention. *Contrast Jensen v. Potter*, 435 F.3d 444, 453 (3d Cir. 2006)(a reasonable fact finder could find a 19 month delay in remedial action insufficiently prompt).

[13] *See also*, *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 295 (2d Cir. 1999)("An employer need not prove success in preventing harassing behavior in order to demonstrate that it exercised reasonable care in preventing and correcting sexually harassing conduct."); *cf. Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir. 1999) ("Title VII does not require that the employer's responses to a plaintiff's complaints of supervisory sexual harassment successfully prevented subsequent harassment, only that the employer's actions were reasonably likely to check future harassment.").

Viewing the undisputed evidence in the light most favorable to Funk, a reasonable jury could not conclude that TSA's formal suspension of FMAs Royer and Potapov was not reasonably calculated to prevent further harassment of Funk. TSA undertook an investigation of Funk's complaints, and as a result, both Royer and Potapov were notified in writing about their improper behavior and suspended from their positions. The message from TSA to the offending employees was clear:

> You have an obligation to act responsibly and your actions in this instance did not meet that obligation. As such . . . the proposed penalty is necessary to impress upon you the seriousness of this misconduct and the need for you to conduct yourself in a professional manner.

(Def's Exs. 4, 5)

Third Circuit precedent demonstrates the adequacy of this response as a matter of law. In *Knabe*, a female waitress complained to management about a male coworker who had touched her in a sexual way at least a dozen times and made overtly sexual comments to her during three separate incidents. 114 F.3d at 408. Management did not formally reprimand the offending employee, but a manager met with him to remind him that "'the company does not tolerate any sexual comments or actions,'" and warn him that "'company violations of this policy will receive a possible suspension and or termination.'" *Id.* at 409. A record of the conversation was signed by the manager and the employee

the next day.

The Third Circuit, affirming the district court's grant of summary judgment to the employer, explained that management's remedial action was adequate as a matter of law because management "made [the offending employee] aware of his responsibilities." *Knabe*, 114 F.3d at 413. Moreover, the Court noted, Knabe had put forth no evidence that if she had returned to work after the warning was given, that she would have faced further harassment. *Id.*

The same conclusion is compelled in this case. A reasonable fact finder could only reach the conclusion that TSA's formal letter and suspension spelled-out-- in both word and deed-- what Royer's and Potapov's responsibilities were. Not only were the offending employees warned as in *Knabe*, they were also disciplined. *Cf. Knabe*, 114 F.3d at 414 ("taking punitive action against the harassing employee, e.g., reprimand, suspension or dismissal, is not necessary to insulate the employer from liability for a hostile work environment. So long as the remedy is reasonably calculated to prevent future instances of harassment, the company cannot be held liable.").

Additionally, even though the Court does not conclude that Royer's and Potapov's transfers to Philadelphia resulted from Funk's complaints, it is nonetheless important to note that Royer and Potapov were in fact transferred. Whether or not the

transfers had anything to do with the alleged harassment, the physical separation of Royer and Potapov from Funk had the effective result of preventing further harassment. As a practical matter, because the men were transferred even before they were suspended, Funk can present no evidence to demonstrate that the harassment continued after the discipline, i.e. that the suspensions were not adequate.

Accordingly, the Court holds that the government is not liable under a theory of respondeat superior.

**IV.**

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. An appropriate order will be issued.

Dated: January 16, 2007

s/ Joseph E. Irenas
**Joseph E. Irenas, S.U.S.D.J.**